IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                    No. 14-CR-3432 RB

OSCAR BETANCES,

      Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING MOTION TO SUPPRESS

Defendant Oscar Betances moves to suppress evidence that a roving Border Patrol agent obtained after stopping his vehicle. (Doc. 31.) The Court held an evidentiary hearing on December 8, 2014. Both parties were represented by counsel and were given a full opportunity to present witness testimony. Having reviewed the parties' submissions and arguments, the Court **DENIES** the motion.

## FINDINGS OF FACT

The Court makes the following factual findings based on the testimony and the exhibits presented at the evidentiary hearing.

1. Driving up from Mexico, Defendant and his co-defendant, Mr. Avila, entered the United States at the Antelope Wells Port of Entry on September 11, 2014, around 12:05 pm MDT. Antelope Wells is in an extremely isolated and rural portion of New Mexico known as the "Bootheel."

2. Defendant was driving a blue convertible Chrysler Sebring with temporary Arizona tags. Customs and Border Patrol ("CBP") agents searched Defendant's vehicle, checked the car's

registration, ran Defendants' criminal history, and permitted Defendants to enter the United States. CBP agents informed Lordsburg Border Patrol that the vehicle was suspicious because of Defendant's travel route and his criminal history, which includes possession of illegal drugs.

3. The road leading out of Antelope Wells, Highway 81, is a well-known drug trafficking corridor, where load vehicles pick up bundles of marijuana that backpackers carry across the border on foot. Border Patrol Agent Julian Rodriguez estimates that Border Patrol apprehends one to two smugglers a week in the area.

4. Border Patrol agents spotted Defendant's car. Most of the vehicles in the rural Bootheel area are ranch vehicles, so Defendant's blue convertible stood out. Defendant was speeding and the agents, who were hauling a trailer, had trouble keeping pace with the car. The tailing agents radioed Border Patrol Agent Julian Rodriguez. Based on an earlier radio call, Agent Rodriguez was waiting for Defendant's car at the intersection of I-10 and Highway 146, because most cars traveling along Highway 81 follow that route. However, the tailing agents informed Agent Rodriguez that Defendant turned before reaching Highway 146, took Highway 9 west, and then turned again to take Highway 113 north.

5. Agent Rodriguez, responding to the new route information, proceeded to the intersection of Highway 113 and I-10 to watch for the vehicle. He stepped out of his patrol car and stared as Defendant approached. Nearing the interchange, Defendant slowed down to approximately 10-20 miles per hour. When Defendant drove by, Agent Rodriguez estimates that he was about ten feet, or one lane of traffic, away from Defendant.

6. As Defendant passed the Agent, he and the co-defendant stared straight ahead without making eye contact. Defendant kept both hands on the steering wheel. Although Defendant was wearing sunglasses, Agent Rodriguez was able to see that Defendant did not turn his head and

that the brim of his hat was directed forward. Agent Rodriguez testified that motorists in the Bootheel generally turn their heads to look at him.

7. Agent Rodriguez noticed a large, dark-colored object in the backseat. The object had a brighter color on top. Based on the Agent's experience, he immediately believed that the object was a marijuana bundle with colorful straps. The Agent has six years' experience serving with Border Patrol near the border area and estimates he has seen well over a thousand marijuana bundles during that time.

8. When Defendant reached I-10, he turned onto the Interstate and headed east. Given that Defendant had been driving westbound on Highway 9 just moments before, Agent Rodriguez's suspicions were heightened. Clearly, the most direct route to I-10 East from Highway 81 is to continue north onto Highway 146 until it intersects with I-10. *See* Map of Defendant's Route, *infra* app. Instead, Defendant went westbound on Highway 9 for fifteen miles, northbound on Highway 113, and then connected with I-10 East. This route took Defendants on a circuitous path and added approximately 30 miles of travel. *See id.* Agent Rodriguez knew that during the week prior, Deming Border Patrol established a temporary checkpoint for northbound traffic on Highway 146. At least one marijuana smuggler was arrested at the checkpoint. Defendant's route of travel avoided that route and temporary checkpoint.

9. Defendant's car was registered in Arizona, but when he turned east on I-10, Defendant was driving away from Arizona.

10. Agent Rodriguez pursued and stopped Defendant's car on I-10 East after 1:45 pm MDT. At the time of the stop, Defendants were less than 80 miles from where they crossed the border and about 40 miles from Mexico.

11. As a result of the stop, Agent Rodriguez found 72.12 kilograms of marijuana. After being read his Miranda warnings, Defendant admitted that he and Mr. Avila picked up a load of marijuana along Highway 81 after passing through the Antelope Wells Port of Entry. Defendant was charged with conspiracy and with possessing and intending to distribute more than 50 kilograms of marijuana. (Compl., Doc. 1.)

12. Defendant now seeks to suppress both the confiscated marijuana and the statement. (Doc. 31.) Defendant's motion does not challenge Agent Rodriguez's arrest and subsequent search. Defendant only objects to the constitutionality of the initial stop.

## CONCLUSIONS OF LAW

1. Roving border patrol agents have the authority to stop vehicles so long as their actions are "supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted). When reviewing whether an agent had the requisite reasonable suspicion to make a stop, courts must look at the "totality of the circumstances." *Id.*

2. The Supreme Court identified several factors a court may consider when reviewing the constitutionality of a border patrol agent's stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975). These factors include:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003) (*citing Brignoni-Ponce*, 422 U.S. at 884-85). Agent Rodriguez's stop was supported by the *Brignoni-Ponce* factors.

3.  The first factor, characteristics of the area, supports the Agent's stop. *See Brignoni-Ponce*, 422 U.S. at 884 ("Officers may consider the characteristics of the area in which they encounter a vehicle."); *United States v. Cheromiah*, 455 F.3d 1216, 1221 (10th Cir. 2006) (considering whether the "area [is] frequented by smugglers" as part of a reasonable suspicion analysis). Near the Bootheel region of New Mexico, backpackers cross the United States-Mexico border carrying bundles of marijuana. Load vehicles then pick up the backpackers' bundles and transport them further into the United States. Agent Rodriguez estimates that the Border Patrol apprehends one to two drug smugglers a week in the area.

4.  The second factor, the proximity of the area to the border, also supports the Agent's decision to stop Defendant. *See Cheromiah*, 455 F.3d at 1221 (considering a car in close proximity to the border when it was 85 miles away); *United States v. Sauzameda-Mendoza*, No. 13-2223, slip. op. at 9-10 (10th Cir. Dec. 8, 2014) (considering a car in close proximity to the border when it was less than 100 miles away). The Defendant was approximately 40 miles from the border when he was stopped. Agent Rodriguez also knew that the car crossed into the United States from Mexico less than two hours earlier.

5.  The third factor, usual patterns of traffic on the road, lends support to the Agent's decision to initiate a stop. *See United States v. White*, 584 F.3d 935, 951 (10th Cir. 2009) ("[I]mplausible travel plans can form a basis for reasonable suspicion."). Defendant took an unusual, circuitous route. *See* Map of Defendant's Route, *infra* app. He first drove west, only to turn east, adding at least 30 miles to his trip. The week before, Border Patrol set up a temporary checkpoint on Highway 146, the more direct route of travel. At least one marijuana smuggler was arrested at the checkpoint. Agent Rodriguez surmised that Defendant was attempting to avoid Highway 146 because of the checkpoint. *Accord Cheromiah*, 455 F.3d at 1221 (noting that

the defendant used a "circuitous" route to avoid Border Patrol checkpoints); *Sauzameda-Mendoza*, slip. op. at 10 (considering a defendant's indirect route, which added 90 minutes of driving time, as part of a reasonable suspicion analysis).

6. Fourth, Agent Rodriguez has significant experience in the border area and knows trafficking patterns. He has six years' experience working with Border Patrol and has seen approximately a thousand bundles of marijuana in that time. Officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Guerrero*, 472 F.3d 784, 797 (10th Cir. 2007) (quoting *Arvizu*, 534 U.S. at 273).

7. Fifth, Agent Rodriguez's knowledge about illegal crossings in the area supported his decision to stop Defendant. Agent Rodriguez has interviewed smugglers and knows many load vehicles come to the Bootheel region to pick up bundles that backpackers carry over the border. Based on his interviews, he knew that vehicles can load the bundles of marijuana in less than 1-2 minutes.

8. Sixth, Agent Rodriguez considered the Defendant's behavior to be evasive, another factor supporting his actions. Agent Rodriguez says that most drivers in the area will look at him if he attempts to make eye contact, especially at such close range. Defendant stared straight ahead, did not turn his head, and kept both hands on the wheel. *See Arvizu*, 534 U.S. at 275-76 ("We think it quite reasonable that a driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona).").

9. Seventh, the vehicle itself raised suspicion. Agent Rodriguez testified that smugglers

often use cars with temporary tags.  Also, Defendant was driving away from Arizona, even though the car was registered in that state.

10.  Finally, the eighth aspect, the appearance that the vehicle is loaded, supports the Agent's actions.  As Defendant's car passed, Agent Rodriguez saw an object in the backseat that was consistent with a marijuana bundle.  Based on that sighting, the Agent said he was reasonably suspicious that the bundle contained marijuana.

11.  In addition to the *Brignoni-Ponce* factors, Agent Rodriguez relied on the information he received from the CBP agents regarding Defendant's criminal history, which included drug possession.  The *Brignoni-Ponce* factors are non-exhaustive.  *United States v. Cortez*, 449 U.S. 411, 421 n.3 (1981); *United States v. Huereque-Mercado*, 132 F.3d 43 (10th Cir. 1997).  Defendant argues that criminal history should not be considered.  However, the Tenth Circuit has recognized that agents may use a person's prior criminal history as one factor "forming a basis for reasonable suspicion," so long as it is not the only factor.  *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994).

12.  Defendant argues that Agent Rodriguez relied on nothing more than "a hunch."  He questions the persuasive impact of each fact, including the route of travel, the eye contact, and the prior criminal history.  He doubts the ability of the Agent to recognize a bundle of marijuana in the backseat of a car as it passes.  He also argues that while the area may be known for smuggling, not every car in the Bootheel can be stopped on that basis.  While the Court agrees that agents acting on  mere hunches violate the Constitution, *United States v. Cantu*, 87 F.3d 1118, 1121 (10th Cir. 1996), the Court finds that Agent Rodriguez had articulable, reasonable suspicion before initiating the stop of Defendant's vehicle.

13. In reviewing reasonable suspicion, a court must consider the factors "from the perspective of the reasonable officer, not the reasonable person." *Brignoni-Ponce*, 422 U.S. at 885. When determining whether an agent had reasonable suspicion under the circumstances, courts "accord[] appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Clarkson*, 551 F.3d 1196, 1201 (10th Cir. 2009). Defendant offered no reason why the Court should discredit Agent Rodriguez's testimony.

14. More importantly, the evidence has to be considered in its totality. Courts must not engage in a "divide-and-conquer analysis" that "evaluates and rejects each factor in isolation." *Cheromiah*, 455 F.3d at 1221 (citing *Arvizu*, 534 U.S. at 267; *United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003)) (quotations omitted). Any factor, by itself, "may be consistent with innocent travel [but] may collectively amount to reasonable suspicion." *Id.* (citing *Arvizu*, 534 U.S. at 274-75) (quotations omitted).

15. Agent Rodriguez collected an abundance of facts to support reasonable suspicion before he initiated the stop. In sum, he knew (a) that smugglers frequented the area near the border, often entering the country without drugs and then picking up an illicit load along Highway 81; (b) that Defendant was taking a circuitous route which avoided an earlier Border Patrol checkpoint; (c) that there was an object in the backseat that resembled a marijuana bundle; (d) that the Defendant did not look at the Agent when he drove past; (e) that the car had temporary tags; (f) that the car, registered in Arizona, was not coming from, nor headed to, that state; and (g) that the Defendant has a positive criminal history.

16. Based on the totality of the circumstances, the Court finds that Agent Rodriguez had grounds to reasonably suspect that Defendant was trafficking illegal drugs. Thus, Agent Rodriguez was acting within the scope of his authority when he stopped Defendant's vehicle.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Suppress (Doc. 31) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

**APPENDIX**



**Gov't Ex. 1, modified**
**Map of Defendant's Route**
**Highways 81, 9, 113, and I-10/Highway 70**